**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 3:13-CR-54** |
| **v.** | ) | |
| | ) | **JUDGES JORDAN/GUYTON** |
| **JAMES ROBERT MORTON,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**UNITED STATES' BRIEF REGARDING**
**RESTITUTION REQUEST OF VICTIM "ANDY"**

The United States of America, by and through the United States Attorney for the Eastern District of Tennessee, hereby files this brief on the issue of the restitution sought by the victim "Andy." For the reasons set forth below, the United States respectfully suggests that the Court should order the defendant to pay restitution in the amount of $20,000 to "Andy."

**I.      Relevant Facts and Procedural History**

An online undercover investigation in September 2012 revealed that the defendant was utilizing a peer-to-peer ("P2P") network to share pornography over the Internet. During a P2P chat with the undercover investigator, the defendant provided a password which allowed the undercover investigator access to the defendant's child pornography. The undercover investigator downloaded ten video files which depicted child pornography from the defendant's computer via the P2P network.

A search warrant was obtained for the defendant's residence, and his computer was seized on November 16, 2012, and later forensically examined. The forensic exam determined that the defendant possessed and had available for distribution an extensive collection of child pornography, including 55 still images which depicted the victim "Andy."

The defendant pled guilty to distributing child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) and acknowledged in his plea agreement that this Court shall order restitution to any victims of the offense charged and victims of any criminal activity that was part of the same course of conduct or common scheme or plan as the defendant's charged offense. Plea Agreement (Doc. 15) at ¶ 11.

## II.     Victim's Restitution Request

On July 9, 2014, the United States received a restitution request from "Andy's" legal counsel, which is filed under seal as "Exhibit 1 to United States' Brief Regarding Restitution Request of Victim 'Andy' ," requesting that the Court order the defendant to pay "Andy" $58,415 in restitution; this figure includes $33,415 in expenses in preparing his restitution claim and $25,000 for the defendant's share of the victim's future psychological counseling costs and future lost income. The defendant's expenses include $29,000 for a forensic psychological exam and $4,415 for an econometric calculation of the victim's future losses.

The United States has reviewed the reports prepared by the victim's experts, Dr. David W. Corwin and Dr. Stan V. Smith. While they are merely rough estimates of the victim's future costs resulting from the trauma he has and will suffer as a result of his victimization, the estimates appear to be reasonable and well-supported. Therefore, the United States accepts the premise that the victim's lifetime total losses resulting from his sexual abuse and the wide circulation of the images of his abuse via the Internet are $2,121,963.

## III.     United States Supreme Court's Guidance for Restitution

Under 18 U.S.C. § 2259(a), restitution to child pornography victims is mandatory. A defendant must be ordered to pay "the full amount of the victim's losses," which may include "any costs incurred by the victim" for:

(A) medical services relating to physical, psychiatric, or psychological care;

(B) physical and occupational therapy or rehabilitation;

(C) necessary transportation, temporary housing, and child care expenses;

(D) lost income;

(E) attorneys' fees, as well as other costs incurred; and

(F) any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(b)(1), (3). A court may not decline to issue a restitution order because of "the economic circumstances of the defendant" or "the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or any other source." 18 U.S.C. § 2259(b)(4).

In *Paroline v. United States*, 134 S. Ct. 1710 (2014), the Court resolved the circuit split and followed the Ninth Circuit's decisions by holding that courts order restitution "to the extent the defendant's offense proximately caused a victim's losses." *Paroline* at 1722. As the Supreme Court recognized, "[t]he knowledge that [the victim's] images were circulated far and wide renewed the victim's trauma and made it difficult for her to recover from her abuse." *Id.* at 1717. Akin to the suffering of many child victims, the crimes of Amy's abuser "were compounded by the distribution of images of her abuser's horrific acts, which meant the wrongs inflicted upon her were in effect repeated; for she knew her humiliation and hurt were and would be renewed into the future as an ever-increasing number of wrongdoers witnessed the crimes committed against her." *Id.* Amy sought restitution from Paroline for lost income, future treatment, attorney's fees and costs, and conceded that her losses did not flow from specific knowledge of defendant Paroline's identity or specific conduct. *Id.*

All members of the Supreme Court agreed that 18 U.S.C. § 2259 requires proximate cause for all of the statute's loss categories. *Id.* They also unanimously agreed that proximate causation was not at issue on the facts of the case, *id.*, and the majority opinion recognized the pervasive problems of trafficking child pornography:

> The demand for child pornography harms children in part because it drives production, which involves child abuse. The harms caused by child pornography, however, are still more extensive because child pornography is "a permanent record" of the depicted child's abuse, and "the harm to the child is exacerbated by [its] circulation."

*Id.* (quoting *New York v. Ferber*, 458 U.S. 747, 759 (1982)).

Proximate causation necessitates two things: first, that "the former event caused the latter" – or actual cause or cause in fact, and second, that the first event has a "sufficient connection to the result." *Id.* at 1719. As to the question of cause-in-fact, the majority opinion (authored by Justice Kennedy) rejected the traditional but-for causation standard advocated by Paroline, as "it would undermine the remedial and penological purposes of § 2259 to turn away victims in cases like this." *Id.* at 1726.

Instead, the Court adopted the government's aggregate-causation theory, based on tort law, that when multiple causes combine to produce an event and no cause is necessary or sufficient, each cause can be said to be one cause-in-fact of the event. *Id.* at 1727. In the case of Paroline, and other similar circumstances, Paroline's criminal conduct contributed to the continuing harm suffered by the victim, and although "it is not possible to identify a discrete, readily definable incremental loss he caused, it is undisputable that he was part of the overall phenomenon that caused [Amy's] general losses." *Id.* at 1726.

The majority then addressed how to calculate restitution in cases where "a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing

traffic in those images, but where it is impossible to trace a particular amount of those losses to the individual defendant." *Id*. at 1727. The Court concluded that defendants like Paroline should be required to pay "restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses," and that the amount should be determined by the district court, in the exercise of its discretion. *Id*. at 1728. In doing so, restitution orders in similar cases would "serve the twin goals of helping the victim achieve eventual restitution . . . and impressing upon offenders the fact that child-pornography crimes, even simple possession, affect real victims." *Id*. at 1727.

The Court declined to provide a precise algorithm for calculating an appropriate restitution figure and emphasized that there is no "precise mathematical inquiry" governing this determination and that district courts must exercise "discretion and sound judgment" in fashioning awards. *Id*. at 1728. Courts should consider a variety of factors, including the number of defendants caught, likely to be caught, and existing in the world; whether the defendant produced or distributed the images; how many images he possessed; and "other facts relevant to the defendant's relative causal role." *Id*. Using these "rough guideposts," courts should determine restitution orders that are neither "severe" nor "trivial." *Id*.

## IV. Analysis of "Andy's" Claim in Light of *Paroline*

Taking from the Court's guidance in *Paroline*, there are a number of relevant factors for the Court to consider in determining an appropriate restitution amount in this case for this victim. Firstly, although the victim has asserted that this defendant should be held liable for the whole amount of incurred expenses for his psychological exam and econometric analysis of losses, this victim will apparently use the same exam and analysis for restitution claims from other criminal

defendants who distributed, received, and/or possessed images of "Andy."[1]  These costs would presumably fall under 18 U.S.C. § 2259(b)(3)(E), "attorney's fees as well as other costs incurred."  Therefore, under the reasoning of *Paroline*, these costs should be apportioned among this defendant and others who have caused the victim to incur these costs as a result of possessing and/or distributing the pornographic images of "Andy" rather than holding this defendant wholly responsible for this classification of the victim's losses.

Secondly, it is important to emphasize that the defendant possessed 55 images of "Andy" and organized them into a folder entitled "Spongebob (FOTOS)," suggesting that the defendant specifically sought out images of this particular victim rather than obtaining them by random downloading of child pornography.  Moreover, as evidenced by the defendant's willingness to share his full collection of child pornography by providing the password to his collection to the undercover investigator, this defendant distributed images of this victim to other pedophiles.

On the other hand, the victim asserts that, as of July 9, 2014, he had received victim notifications from the United States Department of Justice in "somewhat more than 600 federal criminal cases," but had not yet received any restitution rewards.  Therefore, this Court will be unable to consider "the number of past criminal defendants found to have contributed to the victim's general losses" unless there are other awards of restitution prior to defendant Morton's sentencing.  Further, while the more than 600 notifications may be illuminating as to the "number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses," it is difficult to predict with precision from the number of notices what percentage of those notices will actually result in future convictions.  Victim notifications are

---

[1] The undersigned Assistant U.S. Attorney has been informed by an Assistant U.S. Attorney in the Western District of Texas that this victim has sought the same costs in a pending child pornography case in the Western District of Texas.

6

issued every time an image of the victim appears in an investigation and are not based upon indictments returned. Of course, not every investigation necessarily leads to a conviction or even prosecution. Additionally, many of those notifications were provided to "Andy" in cases that have already been sentenced.

While the *Paroline* Court pointed out that restitution awards should represent an application of law, rather than decisionmaking caprice, there is necessarily a need for the Court to engage in discretion and estimation. *Id*. at 1729. Here, the defendant's conduct vis-à-vis this victim appears to be, on the average, more than the product of a random effort to obtain any child pornography, which might have suggested a more than "nominal" award of $3,000. Rather, this defendant amassed a substantial collection of images of "Andy" and apparently sought these images out with particularity. On the other hand, images of this victim appear to have been the subject of widespread distribution, given the large number of victim notifications that he had received as of the date of his restitution request, so it would not make sense to hold this defendant responsible for the lion's share of the victim's losses.

## V. Conclusion

As an appropriate methodology, the United States suggests that the Court should assume that one-third (i.e., approximately 200 of the approximately 600) of the notifications in federal criminal cases that "Andy" has received will result in convictions and is an appropriate divisor for the victim's approximately $2 million in losses. This would suggest a $10,000 per-defendant award may be appropriate for the typical case in which a defendant possesses a handful of images of this particular victim. However, the United States further suggests that the Court should apply a multiplier of two to the $10,000 figure to account for the relative egregiousness of this defendant's conduct toward this victim, i.e., the fact that the defendant sought and possessed a

fairly large number of this victim's images, and distributed them. This approach would fairly

apportion more than a sheer pro rata share of the victim's losses to this defendant. Therefore, the

United States recommends a restitution award of $20,000 in this case. This restitution amount

falls well above "nominal," yet not "severe," in light of the conduct at issue.

Respectfully submitted this 17th day of July, 2014.

> WILLIAM C. KILLIAN
> UNITED STATES ATTORNEY

By:    *s/ Matthew T. Morris*
        Matthew T. Morris
        Assistant United States Attorney
        800 Market Street, Suite 211
        Knoxville, TN 37902
        (865) 545-4167

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 17, 2014, the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

By:    *s/ Matthew T. Morris*
        Matthew T. Morris
        Assistant United States Attorney